UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**JUAN ROLON,**
an individual,
    Plaintiff,

    Case No.
    Hon.

v.

**KELLOGGSVILLE PUBLIC SCHOOLS,**
a municipal school district,
    Defendant.

| Robert Anthony Alvarez (P66954)<br>Agustin Henriquez (P79589)<br>AVANTI LAW GROUP, PLLC<br>Attorneys for Plaintiff<br>600 28th St. SW<br>Wyoming, MI  49509<br>(616) 257-6807<br>ralvarez@avantilaw.com<br>henriquez@avantilaw.com | |
|---|---|

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiff Juan Rolon ("Rolon"), by and through his attorneys at Avanti Law Group, PLLC, and states in support of his Complaint the following:

**NATURE OF ACTION**

1. This is an action brought by Plaintiff under Title VII of the Civil Rights Act of 1964 ("Title VII") as amended, 42 USC § 2000e *et seq.,* to remedy Defendant's discrimination on the basis of national origin (Puerto Rican) and to provide Plaintiff with appropriate relief for having been adversely affected by Defendant Kelloggsville Public Schools ("KPS"). Plaintiff alleges that Defendant unlawfully discriminated against him and subjected him to

1

disparate treatment with respect to the terms, conditions, and privileges of his employment because of his national origin.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 42 USC §2000e-5 and 28 USC §1331, §1343(a)(4).

3. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of Michigan.

4. Plaintiff has fulfilled all the conditions precedent to the institution of this action under 42 U.S.C. §2000(e). On or about June 21, 2019, Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), EEOC #471-2019-03662C. The charge alleged that he had been discriminated against on the basis of his national origin, in violation of Title VII.

5. On July 25, 2019, the EEOC issued a Dismissal and Notice of Rights letter ("Notice") to Plaintiff. *See Exhibit A*.

6. This Complaint has been filed within ninety (90) days of receipt of the Notice.

## PARTIES

7. Plaintiff Rolon is an adult individual residing in Grandville, Michigan.

8. Defendant KPS is a municipal school district for a public school system located in Grand Rapids, Michigan.

9. At all relevant times, Defendant was an employer engaged in an industry affecting commerce within the meaning of section 701(b),(g) and (h) of Title VII, 42 U.S.C. § 2000e(b), (g) and (h).

## GENERAL ALLEGATIONS

10. Plaintiff is Puerto Rican.

11. Plaintiff worked as a full-time maintenance employee for Defendant KPS.

12. From approximately August 2005 to approximately March 6, 2019, Plaintiff was actively employed by Defendant.

13. Throughout the course of his employment with Defendant, Plaintiff performed his job duties in a manner that was satisfactory or better.

14. From August 2005 to November 2018, Plaintiff was employed by Defendant as a Grounds Crew Utility Staff Member.

15. Throughout his employment with Defendant, several incidents occurred in which Plaintiff was singled out or punished inconsistent with his Non-Puerto Rican counterparts.

### The June 2016 Incident

16. In June of 2016, while working at Defendant's Maintenance Building, Plaintiff was sitting in the break room with four of his Non-Puerto Rican coworkers during a break.

17. Jim Lafler ("Lafler"), Plaintiff's supervisor and an administrator/agent of Defendant, came into the break room, singled Plaintiff out, and told him to get back to work.

18. Plaintiff recognized that he had been singled out among his Non-Puerto Rican peers, and replied to Jim Lafler that he was not the only one in the room.

19. Lafler then grew irrationally perturbed at Plaintiff and was frustrated that Plaintiff responded to his remark and stood up for himself.

20. Plaintiff asked Lafler why he was being singled out among his Non-Puerto Rican coworkers.

21. Plaintiff then exited the break room.

22. While Plaintiff exited the breakroom, Lafler then yelled "whatever Mr. Paternity," in efforts to embarrass Plaintiff.

23. Plaintiff knew the comment was directed at him, as he was scheduled to take paternity leave when his wife gave birth.

24. Lafler then yelled for everyone to come outside while he followed Plaintiff out.

25. Lafler obtained a sizeable audience and continued to berate Plaintiff about taking a break, despite the fact that four of Plaintiff's Non-Puerto Rican coworkers were also in the room taking a break.

26. Plaintiff, once again, questioned Jim Lafler as to why he was being singled out when there were four other people in the room.

27. Lafler responded to Plaintiff and stated that he should worry about himself.

28. The altercation between Plaintiff and Lafler stopped when another coworker intervened and Plaintiff removed himself from the area.

29. Plaintiff was singled out and treated differently because of his national origin.

**Interim Supervisory Period and Termination**

30. In November 2018, Plaintiff was promoted to interim maintenance supervisor.

31. Plaintiff was instructed by Defendant that he would be on a probationary period for five (5) months as interim maintenance supervisor before Plaintiff could become the official maintenance supervisor.

32. Defendant previously promoted employees to the position of maintenance supervisor without requiring a probationary period.

33. Plaintiff was the only employee placed on a probationary period before officially assuming the role of maintenance supervisor.

34. Plaintiff's probationary period was set to conclude in approximately March 2019.

35. In approximately February 2019, Plaintiff was informed by Superintendent Samuel Wright ("Wright"), an administrator/agent of Defendant, that two board members were interested in the position of maintenance supervisor.

36. Wright informed Plaintiff that he would be deciding who would officially be named maintenance supervisor.

37. The two board members who were interested in the maintenance supervisor position are Non-Puerto Rican.

38. On February 26, 2019, Plaintiff met with Defendant's administrators and was informed, for the first time, that a student had accused Plaintiff of inappropriate behavior.

39. As a result of the student's accusation against Plaintiff, Plaintiff was placed on administrative leave on February 27, 2019.

40. On March 6, 2019, while Plaintiff was still on administrative leave, Plaintiff was asked to appear at the administration building, where he was then terminated from his employment with Defendant.

41. Plaintiff was told he was being terminated due to the student accusations of Plaintiff engaging in inappropriate behavior.

42. Plaintiff was terminated without the opportunity to defend himself against the student's accusation.

43. Plaintiff was terminated solely on a student's accusation because Plaintiff is Puerto Rican.

44. If Plaintiff were of a different National Origin, he would not have been terminated based solely on an accusation.

45. Defendant used the accusation as a reason to terminate Plaintiff so that Plaintiff's position would be open for the two interested, non-Puerto Rican board members.

46. Eventually, one of the interested non-Puerto Rican board members assumed the position of Maintenance Supervisor.

47. The board member who assumed the position of Maintenance Supervisor was not subject to an interim, probationary period before assuming the position.

48. The non-Puerto Rican board member who assumed the position of Maintenance Supervisor did not have any experience required to assume the position.

## Others Not Terminated Based on Accusations

49. Defendant has a history of treating non-Puerto Rican employees preferential than employees of different races and national origin.

50. In approximately 2006 or 2007, a non-Puerto Rican male employee, in Defendant's finance department, was transferred to a custodial position after accusations were made against him.

51. During his employment in the custodial position, he was accused of sexual misconduct with students and staff.

52. As a result of the accusations, Defendant then transferred, once again, the employee to a different department and gave him a bus driver position.

53. The non-Puerto Rican male employee was once again accused of sexual misconduct with a student.

54. The employee was then, after the second set of accusations, suspended for five days.

55. The employee was able to come back after the suspension and retire.

56. In the Spring of 2007, a non-Puerto Rican female teacher was accused of committing sexual acts with a male student.

57. While the accusation was being investigated by the police, Defendant allowed the non-Puerto Rican female teacher to stay on the staff until she was able to find a job with another district.

58. In approximately March of 2018, a non-Puerto Rican male principal was put on administrative leave after a teacher accused him of sexual harassment.

59. After a month on administrative leave, Defendant promoted the principal to Director of Instruction and transferred him to the administration building, where he would be away from teachers.

60. On or around May of 2019, a non-Puerto Rican male teacher was kept on the staff and allowed to retire early after sexual misconduct accusations were raised against him.

61. The non-Puerto Rican male teacher was allowed to retire early instead of terminating his employment with Defendant.

62. In approximately October 2019, a non-Puerto Rican child care provider employed by Defendant was accused of child abuse.

63. The non-Puerto Rican female employee underwent criminal proceedings as a result.

64. After the child abuse allegation accusations against the non-Puerto Rican female employee, Defendant transferred her to a position in the food services department at one of its high schools.

### **COUNT I - Violation of 42 USC §2000(e): National Origin Discrimination**

65. Plaintiff incorporates by reference all previous paragraphs as if fully stated herein.

66. At all material times, Defendant was an employer, covered by and within the meaning of Title VII of the Civil Rights Act of 1964.

67. Defendant subjected Plaintiff to disparate treatment in the terms, conditions and privileges of his employment.

68. Plaintiff's national origin was a factor that made a difference in Defendant's decision to subject him to disparate treatment with respect to the terms, conditions, and privileges of his employment because of his national origin.

69. Plaintiff's national origin was a factor that made a difference in Defendant's decision to wrongfully terminate him. Defendant, by and through its agents, representatives, and employees, was predisposed to discriminate on the basis of national origin and acted according to that disposition.

70. Had Plaintiff been of a different National Origin, he would not have been subject him to disparate treatment with respect to the terms, conditions, and privileges of his employment

71. Had Plaintiff been of a different National Origin, he would not have been terminated as described.

72. During Plaintiff's employment, Defendant engaged in unlawful employment practices in violation of Section 703 of Title VII, 42 U.S.C. §2000e-2, by subjecting Plaintiff to

disparate treatment in the terms, conditions and privileges of his employment based on his national origin.

73. Upon termination, Defendant engaged in unlawful employment practices in violation of Section 703 of Title VII, 42 U.S.C. §2000e-2, by wrongfully terminating Plaintiff based on his national origin.

74. Plaintiff's national origin was at least one factor that made a difference in the Defendant's decision to treat him differently than others during his period of employment.

75. Plaintiff's national origin was at least one factor that made a difference in the Defendant's decision to terminate Plaintiff.

76. If Plaintiff had been of a different national origin, he would not have been treated differently than others.

77. If Plaintiff had been of a different national originCaucasian, he would not have been terminated differently than others.

78. Defendant, through its agents, representatives and employees, treated Plaintiff differently from similarly situated non-minority employees in the terms and conditions of employment, based on unlawful consideration of his national origin.

79. The effect of the practices complained of in the paragraphs above has been to deprive the Plaintiff of equal employment opportunities and otherwise adversely affected his status as an employee, because of his national origin.

80. The unlawful employment practices complained of were intentional.

81. The unlawful employment practices complained of were done with malice or with reckless indifference to the federally protected rights of Plaintiff.

82. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained a loss of earnings, earning capacity, benefits, has suffered mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter Judgment in his favor against Defendant for the following relief:

A. Lost wages and benefits, past and future, in whatever amount Plaintiff is found to be entitled to;

B. Other compensatory damages in whatever amount Plaintiff is found to be entitled to;

C. Punitive and exemplary damages commensurate with the wrong;

D. An award of interest, costs, and reasonable, actual attorney fees; and

E. Other statutory, legal or equitable relief the Court may deem just or equitable.

Dated: October 25, 2019            Respectfully Submitted,

*/s/   Robert Anthony Alvarez           .*
Robert Anthony Alvarez (P66954)
Attorney for Plaintiff
Avanti Law Group. PLLC
600 28th Street SW
Wyoming, MI 49509
(616) 257-6807
ralvarez@avantilaw.com

## **REQUEST FOR TRIAL BY JURY**

NOW COMES Plaintiff, by and through his attorney, and hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: October  25, 2019             Respectfully Submitted,


                                     */s/   Robert Anthony Alvarez              .*
                                     Robert Anthony Alvarez (P66954)
                                     Attorney for Plaintiff
                                     Avanti Law Group, PLLC
                                     600 28th Street SW
                                     Wyoming, MI 49509
                                     (616) 257-6807
                                     ralvarez@avantilaw.com

11

## VERIFICATION

I declare under penalty of perjury that the statements outlined above in this Complaint are true and accurate to the best of my knowledge, information, and belief.

Date: 10/18/19

_____
Juan Rolon